UNITED STATES of America

v.

Carmen J. D'AMATO, a/k/a "Butchie".

Crim. No. 88–196–2.

United States District Court,
E.D. Pennsylvania.

Aug. 21, 1989.

Robert E. Courtney, U.S. Dept. of Justice, Philadelphia, Pa., for plaintiff.

James C. Schwartzman, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on defendant's motion to have bail continued pending the resolution of his appeal to the Third Circuit. Carmen J. D'Amato was convicted by a jury of conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371, and was acquitted

of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846.[1] I denied D'Amato's post-trial motions, sentenced him to serve a four year period of incarceration, ordered him to pay a fine of $100,000, and required him to surrender to the United States marshal within thirty days. At sentencing, bail was continued pending D'Amato's surrender to the marshal. The present motion to have it continued pending resolution of his appeal must be denied.

Section 3143(b) of Title 18 sets forth the standard for release or detention of convicted defendants pending appeal:

The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to Section 3142(b) or (c); and (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

Section 3143(b) places the burden on the defendant to establish four factors before the court may order release pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Miller*, 753 F.2d 19, 24 (3d Cir.1985). In *Miller*, the Third Circuit defined "substantial question" as "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* at 23. A creatively drafted appeal, however, does not necessarily warrant release in accordance with Sections 3142(b) or (c) of Title 18 in light of the fourth *Miller* factor. An issue must be "likely to result in reversal or an order for a new trial" if decided in defendant's favor; hence, alleged trial errors which were harmless or which had no prejudicial effect, and questions which are not integral to the merits of conviction will not warrant release pending appeal. *Id.* If an issue can be categorized as "fairly debatable," it may be substantial. *United States v. Smith*, 793 F.2d 85, 89 (3d Cir.1986) (quoting *United States v. Handy*, 761 F.2d 1279, 1282 n. 2 (9th Cir.1985)).

In its response to D'Amato's motion, the government does not contend that D'Amato is likely to flee or that he poses a danger to any person or to the community. The government opposes the motion on the basis that the issues to be raised by D'Amato on appeal do not satisfy the third and fourth *Miller* factors.[2]

D'Amato states that the issues he will raise on appeal "include, but are not limited to the following: a. those issues raised in

1. At the conclusion of the government's case-in-chief, I dismissed the other charge against D'Amato, attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846. D'Amato's co-defendant Anthony J. Curcio, was convicted of all ten counts with which he was charged. In addition to tax conspiracy (count ten), Curcio was found guilty of conspiracy to manufacture methamphetamine, attempting to manufacture methamphetamine, distributing methamphetamine, conducting a continuing criminal enterprise, investing the proceeds of an illegal drug activity, three counts of tax evasion, and violating the Interstate Commerce Act.

Curcio and the government reached a stipulation following the verdict as to an eleventh count for forfeiture of property derived from the proceeds of his drug activity.

2. D'Amato filed his notice of appeal on July 27, 1989. As of the date of this memorandum and order, no briefing schedule had been set by the Third Circuit concerning his appeal. The only indication I have, therefore, of the issues to be raised by D'Amato on appeal is the list provided in paragraph 14 of his motion to continue bail.

pretrial proceedings in this case; b. those issues raised in post trial motions in this case; c. those issues set forth in the case of *United States v. Minarik*, 875 F.2d 1186 (6th Cir.1989)." Defendant's motion at 3.

*Pretrial Motions*

D'Amato filed six pretrial motions: to suppress physical evidence, for disclosure of impeaching information, for severance, for relief from prejudicial joinder, for the production of agents' rough notes, and to join in applicable motions of other defendants.

■ As a result, I ordered that the government preserve all rough notes of interviews and promptly provide defendant with all material tending to show his innocence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Following my order, D'Amato did not contend that the government either failed to disclose impeaching material or destroyed its rough notes from interviews of witnesses; hence, any objections pursuant to *Brady* were waived and cannot form the basis of a "substantial question ... likely to result in reversal or an order for a new trial" on appeal.

■ By order of September 14, 1988, I denied D'Amato's motion to sever his trial from that of his co-defendant, Anthony J. Curcio, and his motion for relief from prejudicial joinder. For the reasons set forth in my September 14 order, and particularly in light of the fact that the jury acquitted D'Amato on the drug conspiracy count while finding his co-defendant guilty, there has been no prejudice to D'Amato from a consolidated trial that would raise a "substantial question" on appeal. Any minimal prejudice that D'Amato may have suffered as a result of consolidation would not create grounds for either reversal or a new trial.

By memorandum and order of Dec. 30, 1988, see *U.S. v. D'Amato*, 705 F.Supp. 237 (E.D.Pa.1988), I denied D'Amato's motion to suppress physical evidence. The reasons for my decision were based entirely on controlling legal precedent and are set forth at length in that opinion. The issues raised in

D'Amato's motion to suppress are well-settled, are not "fairly debatable," and therefore are not "substantial."

■ D'Amato's motion to join the applicable motions of his co-defendants was granted as unopposed. The "applicable" motions, all filed by Curcio, were to have the court instruct potential witnesses, for leave to file additional pretrial motions, to compel the government to confirm or deny existence of evidence, for a bill of particulars, for a pretrial hearing on admissibility of co-conspirators' statements, and for disclosure of matters occurring before the grand jury. I denied Curcio's motion requesting that I instruct potential witnesses inasmuch as the government never instructed witnesses not to talk to defense counsel and no witness refused to talk to defense counsel by reason of any communications from the government. By order of November 28, 1988, I refused Curcio's motion for leave to file additional pretrial motions since counsel knew of no other motions that he wished to file. The same day, I denied Curcio's motion to compel the government to confirm or deny the existence of evidence since the government had already furnished all of the requested information relating to offenses charged in the indictment. Curcio's request for a bill of particulars was then properly denied as unnecessary. The motion for a pretrial hearing concerning co-conspirators' statements was also properly refused as unnecessary, since the government was required to offer independent evidence in its case-in-chief to support admission of those statements. The government met its burden at trial; hence, there was no prejudice to D'Amato in my refusing this motion. In view of D'Amato's failure to establish any particularized need or any basis at all for the grand jury material, the motion requesting disclosure was properly refused by order of November 28, 1988.

D'Amato did not contend at trial that my refusal to grant the motions filed by Curcio in any way prejudiced his ability to prepare for trial or adequately to defend himself. Any issues raised by D'Amato on appeal concerning these pretrial decisions are far from novel. Many of these decisions were

within the sound discretion of the court, and could hardly be labeled as "fairly doubtful" or "fairly debatable." Consequently, my refusal to grant the pretrial requests by Curcio raises no "substantial" issues for D'Amato on appeal. If any of these pretrial decisions were wrong, the error was harmless at best; hence, there is no likelihood that a decision in D'Amato's favor would result in reversal or an order for a new trial.

*Post Trial Motions*

■ D'Amato filed a motion for judgment of acquittal, or in the alternative, for a new trial, which was denied by memorandum and order on June 30, 1988. See *U.S. v. D'Amato*, 1989 WL 73691. I carefully considered each of the issues raised in his motion, including sufficiency of the evidence, the propriety of certain pretrial rulings, and the alleged prejudice of several evidentiary rulings, and found all of his allegations to be without merit. For the reasons set forth in my June 30 opinion, I find that D'Amato can raise no substantial issue on appeal arising out of the sufficiency of the evidence to convict him, or out of my pretrial or evidentiary rulings, that would entitle him to reversal or an order for a new trial.

*Minarik Issues*

■ Paragraph one of count ten of the indictment, which sets forth the tax conspiracy on which D'Amato was convicted, states in pertinent part:

> From in or about August 1984, up to and including on or about October 15, 1986, ... Anthony J. Curcio and Carmen J. D'Amato, ... did unlawfully, knowingly and willfully ... conspire ... with each other and with other co-conspirators ... to defraud the United States Government by impeding ... the lawful governmental functions of the Internal Revenue Service ... in the ascertainment, computation, assessment and collection of the revenue, to wit: the income taxes due and owing to the United States of America from Anthony J. Curcio and Carmen J. D'Amato.

Paragraph two states that "[t]he objects of the conspiracy were to prevent the Internal Revenue Service from discovering the sources and amounts of taxable income of Anthony J. Curcio and Carmen J. D'Amato and from assessing and collecting taxes due thereon."

Paragraph three sets forth the manner and means of the conspiracy. The government charged that both D'Amato and Curcio received income from the manufacture and distribution of methamphetamine, and that specific steps were taken by both defendants to hide this income from the I.R.S. In particular, the indictment alleged that the defendants agreed not to report their drug-related income to the I.R.S. The indictment averred that to avoid creating records of receipt of income, defendants made cash real estate purchases and only deposited money into bank accounts in increments under $10,000. The indictment further charged that the defendants used D'Amato's family pest control business, "Bye Bye Birdie, Inc." as a front "to give the appearance that Anthony J. Curcio had a legitimate source of income."

In *United States v. Minarik*, 875 F.2d 1186 (6th Cir.1989), the Sixth Circuit affirmed the district court's decision to grant defendants' motion for judgment notwithstanding the verdict in their prosecution for conspiring to defraud the United States by concealing assets from the I.R.S. In that case, defendants Robert Minarik and Alice Campbell were charged in a one-count indictment with willfully conspiring "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury." *Id.* at 1188. According to the indictment, as part of the conspiracy, defendants agreed to conceal the nature of Campbell's business affairs concerning residential properties that she owned and also "to conceal the source and nature of her income from said business affairs." *Id.* The indictment listed several overt acts allegedly undertaken in furtherance of the charged conspiracy in violation of 18 U.S.C. § 371. In a bill of particulars, the government alleged that the defendants conspired to sell Campbell's real estate for a sum to be paid with several checks, each totalling

less than $5,000, and also conspired to cash the checks in amounts less than $10,000 to avoid the reporting provision of the Bank Secrecy Act, 31 U.S.C. § 5313(a). The bill of particulars alleged that defendants attempted to conceal their transactions from the government because Campbell was on notice that she owed delinquent taxes, and defendants wanted to avoid a levy by the I.R.S. on Campbell's assets.

The problem in *Minarik*, a problem not present in D'Amato's case, was two-fold: First, the bill of indictment failed to allege *one* theory of criminal conduct.[3] Although the indictment charged defendants with conspiring to obstruct "the lawful functions of the Department of the Treasury," it failed to allege exactly what Treasury functions defendants conspired to obstruct. There was no indication in the indictment that defendants were indebted to the government or were under a duty to disclose or not to conceal assets. Secondly, the government drastically changed its theory of the case from the period of the indictment to the time it provided the bill of particulars, and again throughout the trial. Some of these theories simply could not have been predicted from the indictment. Notably, the government shifted its position concerning two allegations central to its case, whether Campbell actually owed taxes or merely believed she owed taxes, and whether defendants conspired to conceal their business affairs or simply intended to defraud the government by engaging in dishonest business activities. As the district court noted when it granted judgment notwithstanding the verdict, the government's changing theories "presented defendants with a moving target as they attempted to prepare a defense." *Id.* at 1189.

There was no such "moving target" in the government's case against D'Amato.

The indictment clearly charged that D'Amato and Curcio conspired to defraud the United States by impeding its assessment and collection of federal income taxes due and owing from defendants. There was never a doubt from either the face of the indictment or from the government's proof at trial that defendants were charged with a duty to pay federal income taxes, and that the various overt acts attributed to them—among other things, failing to file federal income tax returns, making large cash payments for real estate and cars, depositing cash in amounts less than $10,000, listing Curcio on the payroll of Bye Bye Birdie, and falsifying financial information to various I.R.S. agents—specified steps taken to breach that duty.

The government's theory and proof of tax conspiracy adduced at trial tracked the language of count ten of the indictment. The confusion and inconsistencies inherent in *Minarik* were not present in the government's case against D'Amato since the government charged and then proved *one* theory of criminal conduct with respect to count ten of the indictment: conspiring to defraud the United States of taxes due it. Inasmuch as the issues raised in *Minarik* are inapplicable to D'Amato's case, any reliance on *Minarik* in his appeal is sorely misplaced. I therefore cannot agree with D'Amato that by invoking the *Minarik* decision, he raises *any* question of law or fact, not to mention a "substantial question" which, if decided in his favor on appeal "is likely to result in reversal or an order for a new trial."

I conclude that none of the issues asserted in paragraph 14 of D'Amato's motion as grounds for appeal satisfy the burden imposed by Section 3143(b) of Title 18, as interpreted by the Third Circuit in *United States v. Miller*, 753 F.2d 19, 24 (3d Cir.

---

**3.** Section 371 can be violated in either of two ways: first by conspiring to commit an offense against the United States and second, by conspiring to defraud the United States. Although it initially appeared that the charges against Campbell and Minarik were brought under the "defraud" clause of Section 371 rather than the "offense" clause, the bill of particulars, and later, the government's proof at trial, suggested that perhaps the government intended to charge defendants with conspiracy to commit a crime against the United States. The court held that Congress' use of the disjunctive in the statute meant that defendants could not be accused of conspiring to defraud, but then convicted of conspiring to commit specific offenses against the government. 875 F.2d at 1193–94.

1985). D'Amato's request for continuation of bail pending appeal must therefore be denied. On July 20, 1989, I ordered D'Amato to surrender to the United States marshal within thirty days. Due to the filing of D'Amato's motion, I will extend the date on which D'Amato must surrender to August 30, 1989.